TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JEFFREY M. CHEMERINSKY (Cal. Bar No. 270756)
AMY E. POMERANTZ (Cal. Bar No. 275691)
Violent & Organized Crimes Section
Assistant United States Attorneys
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6520
     Facsimile: (213) 894-0141
     E-mail:    jeffrey.chemerinsky@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-792-SVW |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION TO EXCLUDE EVIDENCE AND ARGUMENT PURSUANT TO FEDERAL RULE OF EVIDENCE 412 |
| v. | |
| MICHAEL BYRNES SMITH, | Pretrial Conference: November 29, 2021 |
| Defendant. | Trial: December 7, 2021 |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Jeffrey M. Chemerinsky and Amy E. Pomerantz, hereby files its Motion to Exclude Evidence and Argument Pursuant to Federal Rule of Evidence 412.

//

//

This Motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 25, 2021          Respectfully submitted,

                                      TRACY L. WILKISON
                                      Acting United States Attorney

                                      SCOTT M. GARRINGER
                                      Assistant United States Attorney
                                      Chief, Criminal Division

                                                /s/
                                      JEFFREY M. CHEMERINSKY
                                      AMY E. POMERANTZ
                                      Assistant United States Attorney

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On the morning of June 24, 2019, on board a Carnival cruise ship in international waters, defendant MICHAEL BYRNES SMITH ("defendant") sexually assaulted victim M.M.  At the time of the assault, M.M. was asleep; she was abruptly woken up by the feeling of defendant digitally penetrating her vagina.  Defendant's attempt to stick his fingers in M.M.'s vagina while she slept was entirely uninvited; prior to this contact, M.M. had no physical or sexual relationship with defendant.

Defendant is charged with two crimes based on this conduct: (1) sexual abuse, in violation of 18 U.S.C. § 2242(2)(B); and (2) abusive sexual contact, in violation of 18 U.S.C. § 2244(b).  The assault occurred at sea, within the special maritime jurisdiction of the United States,[1] an area in which there is exclusive federal jurisdiction.

Through this Motion *in Limine*, the government seeks to exclude impermissible questioning as to the victim's sexual or personal history.  Such evidence is plainly inadmissible under Federal Rule of Evidence 412, which excludes any evidence of the victim's sexual history, subject to very limited exceptions that do not apply here.

**II.   FACTUAL BACKGROUND**

On June 21, 2019, defendant, a resident of Long Beach, boarded a Carnival Cruise ship named the "Inspiration" for a friend's bachelor party.  Defendant boarded with two friends, Nicholas Melgar

---

[1] Both the victim and defendant are nationals of the United States, the ship had a scheduled departure from and arrival in the United States (namely, Long Beach), and the ship is foreign registered vessel (registered to the Bahamas).  See 18 U.S.C. 7(8).

1  ("Melgar") and Whitney Redfield ("Redfield").  Victim M.M. also
2  boarded the ship, along with a friend of hers.  The ship departed
3  Long Beach on June 21, 2019, with a scheduled return to Long Beach on
4  the afternoon of June 24, 2019.
5      During the cruise, M.M. met and connected with Melgar; the two
6  soon began a consensual intimate relationship.  On the night of June
7  23, 2019, M.M. met Melgar at the ship's nightclub, then went back to
8  Melgar's cabin with him around 1:00 a.m.  M.M. fell asleep on
9  Melgar's bed; Melgar fell asleep on the floor next to her.
10     Around 3:00 a.m. on the morning of June 24, 2019, M.M. abruptly
11 awoke, feeling someone was digitally penetrating her vagina.  Upon
12 opening her eyes, M.M. realized it was defendant, whom she recognized
13 as defendant's friend and cabinmate.  As M.M. woke up and reacted to
14 the uninvited contact, defendant quickly jumped off her and into his
15 bed and pulled the covers over his head, feigning to be asleep.  M.M.
16 confronted defendant and asked him what he was doing.  When Melgar
17 woke up, M.M. told him that defendant touched her inappropriately;
18 defendant claimed at that time that he believed he and M.M. had a
19 non-platonic connection, and he gave her a massage.
20     M.M. reported the incident to ship security that morning, and
21 assented to a rape kit and examination by the cruise ship doctor.  On
22 the doctor's report, the doctor wrote: "patient stayed over in cabin
23 of friend she met on board.  She was sleeping when she woke up to
24 find his friend trying to put his fingers in her vagina.  The moment
25 she woke up he jumped off and got into his own bed."  On the form,
26 in response to the question of whether there was penetration of the
27 vagina, the doctor checked both "attempted" and "unsure."  The next
28 question was "did other types of penetration occur?" and the doctor

checked "yes" for "digital."  The doctor made a note under emotional assessment: "stable. Crying at times appropriate for situation."  The doctor also followed the sexual assault kit examination step-by-step, including taking a vaginal swab from M.M.

Defendant gave a written statement to ship security, in which he denied touching her vagina and said that M.M. consented to a massage, and he only touched her back.

M.M. provided the following written statement for ship security:

> On 6/24 at about 3am I was sleeping my friend Nick's room, he had 2 other roommates I woke up with Mike Smith on top of me in my bed trying to stick his finger in my vagina. When I woke up he jumped out of bed and quickly went to his bed, grabbed him by the throat and asked him what he was doing.  He told me he thought I needed a massage.  I woke up Nick and his other roommate and told them what happened. Medical assistance was offered, I did a rape kit at the medical center.  I was undressed from the waist down.  I was wearing jeans and a top.  Cabin was dimly lit.  He inserted his finger in my vagina once.  I don't remember how many fingers or how many times.

Although M.M. initially indicated that she did not want to press charges, she ultimately decided to go forward with charges.  M.M. subsequently cooperated with law enforcement and conducted a monitored phone call with defendant on June 26, 2019.  During this call, defendant acknowledged touching M.M., including touching her vagina.  Specifically, defendant and M.M. had the following exchange:

> M.M.:  "I would feel better if [UI] if we could put it, if you would just be honest. Listen, . . . did you or did you not touch my vagina."
>
> Defendant: **"I guess, I, yes, I touched your vagina."**
>
> M.M.:  "Did you go inside or was it just outside?"
>
> Defendant: **"I guess it was going in when you woke up?"**
>
> M.M.:  "What do you mean you guess?

3

>Defendant: "Because I did this, I did, I don't have complete memory of everything, so I mean there was that, the extent of it we, we barely did [UI]."
>
>M.M.: "But you do remember touching my vagina?"
>
>Defendant: **"I'm trying to think of it right now and I can, I can prob, yeah I can visualize me touching it and jumping off of you now that you say this."**
>
>M.M.: "But were you inserting your finger inside me when it happened, or were you just touching it on the outside?"
>
>Defendant: "I think I just touched you on the outside and didn't insert at the time."
>
>…
>
>M.M.: "So I woke up when you were penetrating me, or did you go in and out for a few times before it was stopped?"
>
>Defendant: **"It was when I was penetrating."**
>
>M.M.: "It was when what?"
>
>Defendant: "It was, it was I guess when my fingers, it was when my fingers were going…they were approaching to penetrate you and you woke up."
>
>…
>
>M.M.: "So tell me how deep you went inside my vagina? Was it with one finger or two?"
>
>Defendant: **"I, it was two."**
>
>…
>
>M.M.: "And then how long were you inside me before I woke up?"
>
>Defendant: **"Not at all long, like instantly you woke up."**

However, in a subsequent interview with the FBI on September 19, 2019, defendant repeatedly denied that he touched her vagina and maintained that he only gave her a back massage.

An FBI forensic laboratory tested the samples obtained by the doctor on board the ship, along with reference samples from defendant, M.M., and Melgar. The testing revealed that:

4

- DNA from the inside crotch area of M.M.'s underwear matched defendant's DNA with a likelihood ratio of 1,500, meaning they are 1,500 times more likely if defendant is the contributor than if an unknown, unrelated male is the contributor;
- DNA from the inside front of M.M.'s underwear matched defendant's DNA with a likelihood ratio of 160,000;
- DNA from the outside front of M.M.'s underwear matched defendant's DNA with a likelihood ratio of 2,800; and
- DNA from the outside sides of the crotch area matched defendant's DNA with a likelihood ratio of 340.

**III. UNDER RULE 412, DEFENDANT SHOULD BE PRECLUDED FROM INTRODUCING ANY EVIDENCE REGARDING M.M.'S OTHER SEXUAL BEHAVIOR**

The Court should preclude questioning regarding victim M.M.'s past sexual history. Rule 412 of the Federal Rules of Evidence states that, in cases involving allegations of sexual misconduct, "[e]vidence offered to prove that any alleged victim engaged in other sexual behavior" and "[e]vidence offered to prove any alleged victim's predisposition" are inadmissible. Fed. R. Evid. 412(a). "Sexual behavior" includes "all activities that involve actual physical conduct, i.e. sexual intercourse or sexual contact" or that imply sexual intercourse or sexual contact, such as use of contraceptives, birth of an illegitimate child, or diagnosis of venereal disease." Fed. R. Evid. 412, Advisory Committee Notes, Subdivision (a) (1994). The reference to "sexual predisposition" is "designed to exclude evidence that . . . the proponent believes may have a sexual connotation for the fact finder," such as "the alleged victim's mode of dress, speech, or lifestyle." Id.

5

There are only three narrow purposes for which such evidence is admissible: (1) to prove someone other than defendant was the source of semen, injury, or other physical evidence; (2) to prove consent, if the specific instance of sexual behavior is with the defendant; and (3) to avoid violation of defendant's constitutional rights. None of these exceptions apply to this case.[2]

Here, Rule 412 clearly applies to the allegations in this case, which involve the sexual assault by defendant.  Although the government is unaware of any specific instances of conduct that defendant will inquire into and no notice has been provided, the protections afforded by Rule 412 are important for dual purposes. First, exclusion of inquiry into a victim's past sexual history "protect[s] victims of rape from being exposed at trial to harassing or irrelevant inquiry into their past sexual behavior[.]"  United States v. Saunders, 943 F.2d 388, 392 (4th Cir. 1991); 23 Charles Alan Wright & Kenneth W. Graham, Fed. Prac. & Proc. Evid. § 5384, at 543 (1st ed. 1980) ("The manifest function of Rule 412 is protection of the privacy of the rape victim; this is justified in terms of fairness to her and by the instrumental argument that this will further the interests of the state by encouraging victims to report the crime and to cooperate with the prosecution of rapists."); see also Fed. R. Evid. 412, Advisory Committee's Note to the 1994 amendments ("By affording victims protection in most instances, the

---

[2] Further, prior to admitting such evidence under one of these exceptions, "the court must conduct a hearing in camera and afford the victim and parties a right to attend and be heard."  Fed. R. Evid. 412(c)(2).  In addition, any such "motion, related papers, and the record of the hearing must be sealed and remain under seal unless the court orders otherwise."  Id.  The defendant must provide written notice, in the form of a motion, of his intent to use such evidence at least 14 days prior to trial, or such other time as the Court, for good cause, requires.  Fed. R. Evid. 412(c)(1).

rule ... encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders."). Second, application of Rule 412 avoids unnecessary distraction or confusion based on sexual stereotyping. See Fed. R. Evid. 412 advisory committee's note to the 1994 amendments ("The rule aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process.").

    The Court should apply the Rule's restrictions to this case and exclude any such questioning or evidence here.[3]

**IV. CONCLUSION**

    For the foregoing reasons, the government respectfully requests that this Court grant this Motion.

---

[3] The government recognizes that the intimate relationship between M.M. and Melgar is relevant to the background of how M.M. ended up in that cabin such that defendant had the opportunity to assault her. The government will draw this out in direct examination and it may become a topic for some cross examination as well. However, other areas, such as whether M.M. engaged in protected or unprotected sex with Melgar, or any other private details regarding their intimacy, that do not relate to issues in this case and would be used simply for the purpose of embarrassing M.M. or showing some form of sexual predisposition would be impermissible.